## MATTOX, Gdn v MITHOFF et

Ohio Appeals, 2nd Dist, Franklin Co

No 2564. Decided Jan 3, 1936

Marshall & Marshall, Columbus, for plaintiff.

Blanchard, TouVelle & Nida, Columbus, for defendants.

### OPINION

By HORNBECK, J.

This cause is in this court on appeal.

Eliza Mithoff is the widow of Henry Mithoff, deceased, and prior to the acts complained of was the owner of a life estate in certain real estate on the northeast corner of High and Main Streets in the City of Columbus, Ohio. The defendants were the remaindermen in said real estate.

On the 5th day of February, 1927, Eliza Mithoff quitclaimed her life estate to the defendants for the sum of $2,000.00. Some three months thereafter the defendant sold the real estate for the sum of $110,000.00. The action is to declare all of the defendants, save one who was not served by process, trustees of the true value of the life estate of Eliza Mithoff. The petition avers that the deed from Eliza Mithoff for her life estate was secured by fraud perpetrated upon her by the defendants.

The facts necessary to an appreciation of the question presented are that Eliza Mithoff, at the date upon which she made the deed for her life estate to the defendants, was eighty-six years of age and had for many years lived with two of her brothers and a nephew on South High Street in Columbus. The real estate in which she had a life estate was a three-story business building fronting on High Street and extending east along Main Street. For many years prior to 1925 the Mithoff Hardware Company was a tenant of the plaintiff, paying as rental from $250.00 to $350.00 per month. It was the obligation of Mrs. Mithoff to pay the taxes upon and necessary upkeep of the real estate. In 1925 the Mithoff Hardware Company moved from the business building and thereafter, until the sale of the life estate, the property produced insufficient income to pay the taxes. The outer walls of the building, except on High Street, were of the old-fashioned soft brick and the inside of the walls was of brick, with the exception of the front walls. The property had run down, was badly in need of repairs, and Mrs. Mithoff had insufficient return from the building or funds of her own in 1926 and 1927 and up to the time of the making of her deed, to pay the accumulated taxes and to make any needed repairs on the building.

As early as 1925 a brother of Mrs. Mithoff, Julius Horiger, an elderly brother with whom Mrs. Mithoff lived, called on the firm of Shawaker & Immel, real estate brokers, for the purpose of enlisting their assistance in securing a tenant for the Mithoff Building. As a result of these calls Mrs. Mithoff executed power of attorney to Raymond Zirkle, an employee of the real estate firm, empowering him to sell her dower interest (no doubt meaning life estate) for such a sum as he felt proper. Acting un-

der the power of attorney Zirkle entered into negotiations with the defendants and undertook to sell them the life estate of Mrs. Mithoff for the sum of $15,000.00. In conjunction with his proposal to sell the life estate he set up a proposition whereby the whole estate, both life and remainder, would be leased on a ninety-nine year lease with a consideration aggregating $250,000.00. There is no showing whatever that there was any prospect interested in this proposal. It is probable that it was nothing more nor less than an attractive proposition set up by the real estate agents intended to accomplish the sale of the life estate for the sum of $15,000.00. The remaindermen showed no interest whatever in the proposition to purchase the life estate at the quoted figure and on the 18th of June, 1926, Zirkle transmitted a proposition to the remaindermen to sell the life estate for the sum of $3,000.00 cash. The taxes due and payable the first half of 1925 were paid on January 30, 1926, but thereafter none were paid and at the time the deed was made the accumulation was about $2700.00.

Thereafter, and probably as a result of the negotiations instituted by Zirkle, on the 11th of October, 1926, there was a meeting at the office of Fred W. Postle, attorney at law, 8 S. Broad Street, Columbus, Ohio, at which were present, besides Mr. Postle, Julius Horiger, Raymond Zirkle, all acting for Mrs. Mithoff, George B. Durant, husband of Lydia M. Durant, a remainderman, Mrs. Leslie Mithoff, Doris Klie and Henrietta Butler, remaindermen. A like meeting was held on October 12 at the same office with the same persons in attendance. Later, on the same day, some of the remaindermen again met but there was no agreement among the parties as to the purchase of the life estate. Thereafter, George B. Durant, Mrs. Leslie Mithoff and Oscar Durant called upon Eliza Mithoff at her residence, Julius Horiger also present. Mrs. Mithoff was told that if the delinquent taxes were not paid upon the real estate application would be made for a receiver to take over the property. It is claimed that at this meeting Mrs. Mithoff agreed to take the sum of $2,000.00 for her life estate, the remaindermen to assume payment of the taxes.

The suit was instituted to appoint a receiver and to declare a forfeiture of the life estate and on the 24th of November, 1926, on hearing, a receiver was appointed. Thereafter, on February 5, 1927, a deed was made by Eliza Mithoff to the remaindermen for a consideration recited as $1.00 but in fact $2,000.00. The remaindermen agreed to pay the costs of the receivership suit and although no mention was made of the payment of taxes and assessments the amount due therefor was a charge against the real estate and became the obligation of the remaindermen. About three months thereafter William Locs purchased the Mithoff property for the sum of $110,000.00.

It is the claim of the plaintiff that Mrs. Mithoff, at the time of the negotiations leading up to and completing the sale of her life estate, was, because of the infirmities of old age, incapable of attending to business transactions; that she was suffering from senile dementia; that the defendants fraudulently induced her to make the deed to them of her life estate, and that in the situation there is such disparity between the actual value of her life estate as of the date of the deed and the consideration paid by the defendants as to raise an inference of fraud.

Six witnesses for the plaintiff and one called on behalf of the defendants testified as to the mental condition of Mrs. Mithoff at or about the time of the making of the deed. They were friends of Mrs. Mithoff of many years standing, some of them distantly related, and all gave a very full and complete statement of extended conversations had between them and Mrs. Mithoff and a narration of her conduct on the many occasions that they visited her. These witnesses enjoyed the confidence and friendship of Mrs. Mithoff, had ample opportunity to observe her condition and very fully and completely afforded this court with a picture of her mental state. Based upon their testimony two experts of recognized ability, Dr. Earl E. Gaver and Dr. Robert C. Tarbell expressed the opinion that on February 5, 1927, the date that the deed for the life estate was made, Mrs. Mithoff was suffering from senile dementia, was not of sound mind or capable of transacting ordinary business. The symptoms upon which the doctors based their opinions were that Mrs. Mithoff was afflicted with loss of memory, badly confused in identifying well-known friends could not carry on a connected conversation, lived largely in the past, had hallucinations, would talk to pictures on the wall, speak to imaginary horses and chickens. Some of the witnesses say that she owned no chickens when she was talking to them; others that she did then own some. This is beside the point. It is obvious that when the witnesses who testified observed the hallucinations of Mrs. Mithoff concerning chickens there were no chickens even though Mrs. Mithoff may

have had some chickens on her premises.

To meet the issue on the mental capacity of Mrs. Mithoff the defense introduced testimony of ten witnesses, to the effect that Mrs. Mithoff was of sound mind and capable of attending to business transactions on or about the date the deed for the life estate was made. These witnesses, in our judgment, did not have as satisfactory opportunity to consider the mental state of Mrs. Mithoff as the witnesses who testified for the plaintiff. Several of the witnesses for the defense indicated only a meager basis for their opinions, and the testimony of the witnesses Bamberger, Kropp, Postle and Saile is not admitted, because objection and exception to their statements was noted in the record. The objections will be sustained because the witnesses did not, in conjunction with their testimony, state enough of the facts upon which they predicated their opinions to make it competent.

It is our opinion that the record does support the conclusion that Mrs. Mithoff was in such mental state that she was susceptible to influence, and it is very doubtful if she had the mental capacity to properly protect herself against sharp practice in a business transaction. However, this is an action in equity and we must find, if relief is accorded the plaintiff on her petition, either that there was actual fraud practiced upon Mrs. Mithoff or that in view of her mental state the consideration paid to her for her life estate was so out of proportion to the value thereof as to suggest fraud. We can not find fraud in either form upon this record.

The consideration passed to Mrs. Mithoff was approximately $5,000.00. She was past eighty-six years of age, feeble and frail. Her age alone was enough to cause any one to hesitate to pay her any considerable sum of money for the prospect of enjoying her life estate. Zirkle had had the opportunity to dispose of her life estate for many months and was unable to accomplish anything whatever. The fact is that there was only one source from whom Mrs. Mithoff had any reason to expect a purchaser, and that was the remaindermen. The real estate had practically no rental value because no tenant of worth would undertake to move to the building upon the uncertain tenure of the life of Mrs. Mithoff. It is probable that had Mrs. Mithoff retained her life estate she would have been unable to have collected enough rent from the building to meet her taxes, and to make repairs was out of the question. This was the situation with which she was confronted and had she been of the soundest mind

it is not probable that she could have negotiated a better sale price than she secured when the deed was made. She was represented by her brother, by Zirkle and by Postle. It is true that the record is not clear as to the extent to which these parties represented her, but in some particular all of them did represent her. It is obvious that her brother was insistent upon something being done about the life estate and many times attempted to bring about the sale. It may be and probably is the fact that he wanted the benefit of the money which would come from the sale, because he and those who comprised Mrs. Mithoff's household evidently were in great need of funds. But nothing that any of them did is inconsistent with good faith. The remaindermen were in a position to wait for a bargain and Mrs. Mithoff, because of developments other than those relating to her mental instability, was compelled to take about what the remaindermen were willing to pay her. This fact is apparent on the record and is testified by all who knew anything on the subject. The action to forfeit the life estate was a compelling factor in the disposal of the life estate, but its institution was a right which the remaindermen could properly exercise.

Upon the situation as it was presented to Mrs. Mithoff and those who represented her, the sum of $5,000.00 for her life estate was not an unfair price. Of course, in the light of the sale of the real estate some three months thereafter for the sum of $110,000.00, her life estate was more valuable. It does not appear that this sale was imminent when the life estate was deeded, but if it had been the remaindermen were in position to sell or refuse to sell, and the life tenant could not force the sale of the real estate. We can not estimate the value of Mrs. Mithoff's life estate upon the basis of $110,000.00, because there was no such amount of money available for the title as it stood when the deed for her life estate was made.

We appreciate the unfortunate financial condition of Mrs. Mithoff and regret that she was not given more consideration and treated with more liberality. The defendants were not blood relatives of Mrs. Mithoff and sustained no relation of trust or confidence toward her. There is no evidence in this record of any overt act on the part of any of the defendants which can be said to be fraudulent, nor does the consideration for the deed of the life estate raise any presumption of constructive fraud.

Upon a fair consideration of this whole record, which we have carefully read, we

are satisfied that the plaintiff is not entitled to the relief prayed in the petition.

Finding and judgment for defendants.

BARNES, PJ, and BODEY, J. concur.